# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-08-00408-CV
---

The Spicewood Summit Office Condominiums Association, Inc., Appellant

v.

America First Lloyd's Insurance Company, Appellee

---
**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT
NO. D-1-GN-07-001768, HONORABLE JON N. WISSER, JUDGE PRESIDING**
---

## O P I N I O N

Commercial property owned by appellant Spicewood Summit Office Condominiums Association, Inc. was damaged in a hailstorm. The property was insured by appellee America First Lloyd's Insurance Company. Spicewood claims that America First has not paid all amounts due under the insurance policy as a result of the damage caused by the hailstorm. America First denied that it has failed to pay under the terms of the policy, and sought summary judgment as to Spicewood's contract-based claims based on the contractual limitations period having run and as to Spicewood's extra-contractual claims based on the assertion that there is no evidence of America First's bad faith in rejecting Spicewood's claim under the policy. The district court granted summary judgment in favor of America First as to all of Spicewood's claims. We affirm the judgment as to Spicewood's extra-contractual claims. However, we find that the contractual limitations provision in the insurance contract is void and, therefore, reverse the district court's judgment as to Spicewood's contract-based claims and remand.

*Factual and Procedural Background*

On March 25, 2005, a hailstorm damaged five two-story buildings at the Spicewood Summit Office Condominiums in Austin. The buildings each have "metal clad wall panels on the upper stories" and "batten style architectural metal roof panels." Spicewood Summit Office Condominiums Association is the property owner. Spicewood had an existing insurance policy with America First Lloyd's Insurance Company insuring the premises against property loss occurring from damage caused by windstorm and hail.

Spicewood reported the damage to America First on March 28, 2005. After America First's initial assessment of the loss, Spicewood obtained an independent assessment that estimated a significantly higher cost of repair. America First then had an inspection of the property performed and issued payments for "minor additional roof repairs" on November 16, 2005. On March 13, 2006, in response to another inquiry from Spicewood, America First had a reinspection of the buildings performed, which resulted in a supplemental payment by America First on May 10, 2006. On January 4, 2007, Spicewood requested that the claim be reopened and the property reinspected, which resulted in two additional inspections and another supplemental payment made by America First in May 2007.

Dissatisfied with the amounts paid by America First, Spicewood filed suit against America First on June 13, 2007. In its petition, Spicewood asserted claims for breach of the insurance contract, prompt-payment penalties under subchapter B of chapter 542 of the insurance code, and related attorneys' fees. Spicewood also asserted extra-contractual claims for breach of the duty of good faith and fair dealing under the common law, violation of insurance code chapter 541 and the Deceptive Trade Practices-Consumer Protection Act, and related attorneys' fees.

America First filed both "traditional" and "no evidence" motions for summary judgment. On March 21, 2008, the district court granted America First's motions for summary judgment, ruling that (1) Spicewood's claims for breach of contract, prompt-payment penalties, and related attorneys' fees were precluded based on "the contractual limitations period provided in the [insurance] policy," and (2) Spicewood's extra-contractual claims were precluded because "there was, at most, a *bona fide* dispute regarding the extent of damage and valuation of Plaintiff's loss." Spicewood appeals the judgment. We review the summary judgment de novo. *See Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004).

### Contractual Limitations Provision

America First asserted in its "traditional" motion for summary judgment that the limitations period established by the insurance contract precludes Spicewood's breach of contract claim. Under the "traditional" Rule 166a(c) standard, a summary judgment should be granted only when the movant establishes that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215-16 (Tex. 2003). A defendant moving for summary judgment on the affirmative defense of limitations has the burden to conclusively establish that defense. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005). If the movant establishes that limitations bars the action, the non-movant must then adduce summary judgment proof raising a fact issue in avoidance of limitations. *Id.* When reviewing a summary judgment, we take as true all competent evidence favorable to the non-movant, and indulge every reasonable inference and resolve any doubts in the non-movant's favor. *Id.*

3

As a general rule, the statute of limitations for a breach of contract action is four years from the day the cause of action accrues. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.051 (West 2008); *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002). Parties may contract for a different period of time in which a party may file a breach of contract action. *See Jett v. Truck Ins. Exch.*, 952 S.W.2d 108, 109 (Tex. App.—Texarkana 1997, no writ). However, section 16.070(a) of the Texas Civil Practice and Remedies Code sets a statutory limit with respect to how short the period may be.

> [A] person may not enter a stipulation, contract, or agreement that purports to limit the time in which to bring suit on the stipulation, contract, or agreement to a period shorter than two years. A stipulation, contract, or agreement that establishes a limitations period that is shorter than two years is void in this state.

Tex. Civ. Prac. & Rem. Code Ann. § 16.070(a) (West 2008).

Civil practice and remedies code section 16.070(a) does not explicitly limit what event can trigger a contractual limitations period. However, under the plain language of section 16.070(a), the "time in which to bring suit" cannot be shorter than two years. A party is unable to bring suit until the party's cause of action has accrued. *See Luling Oil & Gas Co. v. Humble Oil & Refining Co.*, 191 S.W.2d 716, 721 (Tex. 1945) ("The accrual of a cause of action means the right to institute and maintain a suit, and whenever one person may sue another a cause of action has accrued."); *Port Arthur Rice Milling Co. v. Beaumont Rice Mills*, 143 S.W. 926, 928 (Tex. 1912) ("'The accrual of the cause of action' means the right to *institute* and *maintain* a suit; and whenever one person may sue another a cause of action has accrued, and the statute [of limitations] begins to run."). Likewise, the plain language of section 16.070(a) establishes a two-

year minimum for the "limitations period," which by its general meaning has as its beginning point the accrual of a cause of action. *See Barker v. Eckman*, 213 S.W.3d 306, 311 (Tex. 2006) ("Limitations begins to run upon accrual of the cause of action."); *Seureau v. ExxonMobil Corp.*, 274 S.W.3d 206, 226 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("'Accrual' refers to the date when a limitations period begins to run."). Consequently, a *contractual* limitations period, to comply with section 16.070(a), cannot end until after two years after the day the cause of action for breach of the agreement has accrued.[1]

This does not mean that the trigger for a contractual limitations period must be the accrual of the applicable cause of action. Rather, the statute requires that, even if the parties to a contract establish an event other than the accrual of a cause of action as the trigger for the contractual limitations period, the contractual period for filing suit cannot end until at least two years after the cause of action accrues. It necessarily follows that if a contractual limitations period for a cause of action is set at a minimum length of two years, the contract cannot establish a trigger for that period that occurs prior to the accrual of the cause of action, as that would have the effect of shortening the period for filing suit to less than two years.

---

[1] Our statutory interpretation comports with those courts that have previously construed civil practice and remedies code section 16.070(a) or its predecessor. *See Holston v. Implement Dealers Mut. Fire Ins. Co.*, 206 F.2d 682, 684 (5th Cir. 1953) ("The clear meaning of the statute is that the plaintiff must be given at least two years after the accrual of his cause of action within which to file suit."); *Salazar v. Capitol County Mut. Fire Ins. Co.*, No. 04-96-00995-CV, 1998 Tex. App. LEXIS 2450, at *5-7 (Tex. App.—San Antonio Apr. 22, 1998, no pet.) (not designated for publication); *Culwell v. St. Paul Fire & Marine Ins. Co.*, 79 S.W.2d 914, 916 (Tex. Civ. App.—Eastland 1935, writ dism'd w.o.j.); *American Sur. Co. v. Martinez*, 73 S.W.2d 109, 112 (Tex. Civ. App.—El Paso 1934, writ ref'd); *Taylor v. National Life & Accident Ins. Co.*, 63 S.W.2d 1082, 1083 (Tex. Civ. App.—Amarillo 1933, writ dism'd w.o.j.).

5

The insurance contract between America First and Spicewood contains the following provision:

> No one may bring a legal action against [America First] under this policy unless:
>
> a.    There has been full compliance with all the terms of this insurance, and
>
> b.    The action is brought within 2 years and one day after the date on which the direct physical loss or damage occurred.

According to subsection (b) of this provision, the two-year contractual limitations period commences on the date of loss. Thus, for the contractual period to comply with civil practice and remedies code section 16.070(a), Spicewood must have been able to bring its claim for breach of contract against America First as early as the date of loss. However, subsection (a) of the contractual provision requires that there must be "full compliance with all the terms" of the insurance policy by the insured for it to bring a "legal action." *See Jett*, 952 S.W.2d at 111-12 (interpreting similar contractual provision to mean "all of the insured's requirements within the policy must be met before a suit against the insurer can be brought"). The insurance contract requires that Spicewood give prompt notice of loss or damage to the insured property, and provides America First fifteen days after receipt of such notice to begin its investigation and request a "signed, sworn proof of loss." America First's obligation to provide notification that the claim has been accepted or denied, in full or in part, is not triggered until Spicewood has submitted the proof of loss and all other information requested by America First. Therefore, Spicewood was not entitled to file suit against America First under the policy on the date on which the direct physical loss or damage occurred because, without more, no breach of the insurance agreement by America First had

yet occurred, and Spicewood did not yet have a cause of action for breach of contract. *See Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990) ("[A] cause of action generally accrues at the time when facts come into existence which authorize a claimant to seek a judicial remedy."). A trigger date for a two-year contractual limitations provision that precedes the date the cause of action accrues, such as the provision at issue here, will result in a "time in which to bring suit" that is shorter than two years in violation of section 16.070(a) of the civil practice and remedies code. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.070(a).

A provision in an insurance contract that establishes a limitations period shorter than two years is void. *See id.* As discussed above, the provision at issue in this case has the practical effect of providing a period in which to file suit that is less than two years. Therefore, the contractual limitations provision is void. As a result, the four-year statute of limitations governs Spicewood's breach of contract claim. *See id.* § 16.051; *National Military Mut. Life Ins. Co. v. Cross*, 379 S.W.2d 96, 99 (Tex. Civ. App.—Corpus Christi 1964, no writ); *Culwell v. St. Paul Fire & Marine Ins. Co.*, 79 S.W.2d 914, 916 (Tex. Civ. App.—Eastland 1935, writ dism'd w.o.j.). Spicewood's petition, which was filed on June 13, 2007, was filed within this four-year limitations period.[2]

---

[2] There is no dispute between the parties that if a four-year limitations period applies, it would be satisfied here. Therefore, we need not determine whether the limitations period began to run on the date of loss, *see Administrative Servs. of N. Am. v. Hartford Fid. & Bonding Co.*, 245 F. App'x 384, 386 (5th Cir. 2007) (voiding contract's provision regarding limitations period's duration, but not voiding provision regarding accrual of claim), on the date of the initial payments under the policy, *see Pace v. Travelers Lloyds of Tex. Ins. Co.*, 162 S.W.3d 632, 634-35 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (holding that limitations began to run on denial of coverage, and reconsideration of claim did not restart limitations period), or on the date of the final payments under the policy, *see Peña v. State Farm Lloyds*, 980 S.W.2d 949, 954 (Tex. App.—Corpus Christi 1998, no pet.) (holding that "reinvestigation of and partial payment for the same reported problems" reset starting date for limitations period).

America First contends that two Texas federal cases—*Douskos v. Eden Park Insurance Co.*, No. A-01-CV-192 JRN, 2001 U.S. Dist. LEXIS 7953 (W.D. Tex. June 15, 2001), and *Port Arthur Towing Co. v. Mission Insurance Co.*, 623 F.2d 367 (5th Cir. 1980)—confirm the validity of a two-year contractual limitations period that runs from the date of loss. We are not persuaded that these cases support America First's position. In *Douskos*, the insurance contract provided that suit must be brought "within 2 years after the date on which the direct physical loss or damage occurred." 2001 U.S. Dist. LEXIS 7953, at *5. The court held that the phrase "within 2 years" resulted in a period shorter than two years and, therefore, found the contractual provision void. *See id.* at *5-6. The court did not, however, hold that the provision would have been valid if it had instead stated "within 2 years and one day." *See id.* In *Port Arthur*, the insurance contract provided that the limitations period was the "shortest limit of time permitted" by state law. 623 F.2d at 368. The court held that a two-year limitations period applied as the shortest period permitted by Texas law, and dismissed the plaintiff's lawsuit as untimely. *See id.* at 369-70. The court did not, however, discuss or analyze *when* the limitations period commenced or the trigger date's effect on the actual length of the limitations period.[3]

In addition, America First contends that the form of the insurance policy at issue was approved by the commissioner of insurance, *see* Tex. Ins. Code Ann. § 2301.006(a) (West 2009) ("[A]n insurer may not deliver or issue for delivery in this state a form for use in writing insurance

---

[3] We note that when faced with the identical situation as in *Port Arthur*, the Fourteenth Court of Appeals rejected the Fifth Circuit's holding, and held instead that a contract providing for the "shortest limitation of time permitted" by state law fails to specify a lawful period of limitations, resulting in application of the four-year statute of limitations. *See Duster v. Aetna Ins. Co.*, 668 S.W.2d 806, 806-07 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd).

. . . unless the form has been filed with and approved by the commissioner."), and that we should defer to the commissioner's approval of the policy's limitations provision as an expression of the validity of the provision under civil practice and remedies code section 16.070. Construction of a statute by the administrative agency charged with its enforcement is entitled to serious consideration, so long as the construction is reasonable and "does not contradict the plain language of the statute." *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993). It is not clear in this case that the commissioner's approval of the policy form is any form of a statement by the commissioner regarding the proper interpretation of section 16.070. Nonetheless, even if it were, the insurance policy's limitations provision contradicts the plain language of section 16.070(a). Therefore, any amount of deference we provide to the insurance commissioner's approval of the form of America First's insurance policy would not result in the validation of the policy's limitations provision in light of section 16.070's clear mandate.

Because the two-year contractual limitations period is unenforceable, Spicewood's breach of contract claim is not barred by limitations. Therefore, the district court's grant of summary judgment as to Spicewood's claims for breach of the insurance contract, statutory penalties for delayed payments under the policy under insurance code chapter 542, and related attorneys' fees was error.[4]

---

[4] America First concedes that reversal of the district court's judgment on the breach of contract claim also results in reversal of the court's judgment on Spicewood's claims for prompt-payment penalties and related attorneys' fees. *See Harris v. American Prot. Ins. Co.*, 158 S.W.3d 614, 623 (Tex. App.—Fort Worth 2005, no pet.) (insurer not liable for violation of prompt-payment statute unless liable for underlying insurance claim); *Wheelways Ins. Co. v. Hodges*, 872 S.W.2d 776, 783 n.8 (Tex. App.—Texarkana 1994, no writ) (attorneys' fees recoverable pursuant to civil practice and remedies code section 38.001 in successful suit for breach of contract).

*Bona Fide Coverage Dispute*

In its petition, Spicewood also claims that America First's "wrongful withholding of benefits" constituted a breach of the common law duty of good faith and fair dealing and a violation of insurance code chapter 541, *see* Tex. Ins. Code Ann. §§ 541.001-.454 (West 2009) ("Unfair Methods of Competition and Unfair or Deceptive Acts or Practices"). Spicewood further alleges that America First's "act of denying payment of benefits" violated the Deceptive Trade Practices-Consumer Protection Act (DTPA), *see* Tex. Bus. & Com. Code Ann. §§ 17.41-.63 (West 2002 & Supp. 2008).

An insurer breaches its duty of good faith and fair dealing by denying or delaying a claim when the insurer's liability has become reasonably clear. *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 55-56 (Tex. 1997).[5] The focus is not on whether the insured's claim was valid, but on the reasonableness of the insurer's conduct in rejecting the claim. *See Lyons v. Millers Cas. Ins. Co.*, 866 S.W.2d 597, 601 (Tex. 1993); *Oram v. State Farm Lloyds*, 977 S.W.2d 163, 166-67 (Tex. App.—Austin 1998, no pet.). This inquiry is a fact issue. *See Giles*, 950 S.W.2d at 56. Absent legally sufficient evidence of bad faith, however, Spicewood's claims under the common law, insurance code chapter 541, and the DTPA are subject to summary judgment. *See U.S. Fire Ins. Co. v. Williams*, 955 S.W.2d 267, 268-69 (Tex. 1997) (summary judgment dismissing common law claim proper where no evidence of bad faith); *Douglas v. State Farm Lloyds*, 37 F. Supp. 2d 532, 544 (S.D. Tex. 1999) ("[W]hen an insured joins claims under the Texas Insurance Code and

---

[5] An insurance company may also breach its duty of good faith and fair dealing by failing to reasonably investigate a claim. *See State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44-45 (Tex. 1998); *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 n.5 (Tex. 1997). Spicewood has not alleged a violation of this duty.

the DTPA with a bad faith claim, all asserting a wrongful denial of policy benefits, if there is no merit to the bad faith claim, there can be no liability on either of the statutory claims."). Evidence establishing only a "bona fide coverage dispute," without more, does not rise to the level of bad faith. *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998); *Williams*, 955 S.W.2d at 268.

America First asserted in its "no evidence" motion for summary judgment that there was no evidence of bad faith and "Spicewood cannot show anything more than a *bona fide* dispute with regard to coverage." Under the Rule 166a(i)—or "no evidence"—standard, after adequate time for discovery a defendant may move for summary judgment on the ground that there is no evidence of one or more essential elements of a claim on which the plaintiff would have the burden of proof at trial. *See* Tex. R. Civ. P. 166a(i). A no evidence summary judgment is essentially a pre-trial directed verdict, and we apply the same legal sufficiency standard. *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex. App.—San Antonio 1998, pet. denied). We review the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. *Id.* The granting of a no evidence motion will be sustained when the evidence offered by the non-movant to prove a vital fact is no more than a mere scintilla. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997). More than a scintilla of evidence exists when the evidence as a whole rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id.* Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion. *Moore*, 981 S.W.2d at 269.

Spicewood attached to its response to America First's motion for summary judgment the same documents that America First attached to its motion: a copy of the insurance contract, an

11

affidavit by America First's senior claims analyst with primary responsibility for investigating Spicewood's claim under the policy, and three reports made by inspectors hired by America First assessing the damage to the property. According to these documents, America First hired a roof consultant in 2005 to reinspect the property after Spicewood obtained from its roofing contractor a cost estimate of the hailstorm damage in excess of $392,000. The consultant's November 7, 2005 report details his on-site investigation and building-by-building assessments of damage and cost estimates for repairs. For several of the buildings, the consultant identified damage that he assessed as "maintenance issues" that were not caused by the hailstorm. America First issued payments of $1,623.75 per building on November 16, 2005, in accordance with the roof consultant's report. In early 2006, America First again sent the roof consultant to the Spicewood property for a reinspection, which was performed with Spicewood's roofing contractor present. From this March 13, 2006 inspection, the consultant again assessed "no functional loss" to wall panels, but observed "very minor and sparse denting" when viewed from different angles. There is no report from the 2006 inspection in the record. According to the senior claims analyst's affidavit, America First issued a supplemental payment on May 10, 2006, in accordance with the consultant's new estimate following the 2006 inspection.

In early 2007, Spicewood again requested a reinspection of the property. America First assigned the task to a different company. The March 1, 2007 report following the reinspection describes the inspection of each building. The new inspector found "no damage that would warrant the replacement of this metal roof system." However, the new inspector—per America First's request—contacted an engineering company to investigate the property. The engineering company's nine-page report, issued on April 3, 2007, contains building-by-building

12

descriptions of the company's inspections and conclusions. The engineering company concluded that, "[f]rom an engineering and functional perspective, the metal roof and siding panels are functioning as intended and do not warrant repair or replacement." Based on the engineering company's finding that the "western exposures of the metal siding panels" on four of the buildings had been "cosmetically affected by hail stone impact," America First issued a final payment in May 2007.

In contrast to the reports in the record from America First's three inspectors, Spicewood did not produce any reports or testimony from any other expert as to the reasonableness or unreasonableness of America First's loss assessments. Indeed, there is no evidence at all of how any amount of damages sought by Spicewood has been determined. As a result, there is no evidence that any amount sought by Spicewood under the policy is reasonable, or that any inspector relied on by Spicewood to determine such an amount is qualified and reliable. Further, there is no evidence that the reports of America First's inspectors were not objectively prepared, or that America First's reliance on each of those reports in making payments to Spicewood was unreasonable, or any other evidence from which a fact-finder could infer that America First acted without a reasonable basis or that liability in excess of the reports' damage assessments was reasonably clear. *See Lyons*, 866 S.W.2d at 601.

Spicewood appears to argue that the fact that an insurance company would agree to perform subsequent assessments that result in additional amounts paid under the policy, by itself, is some evidence of bad faith. However, this evidence standing alone does not suggest anything in the nature of bad faith. If anything, an insurer's agreeing to perform a reassessment demonstrates good faith. To find otherwise might encourage insurers to stand by their initial assessments for fear

13

that their willingness to consider new evidence and issue supplemental payments would indicate their initial assessments were made in bad faith. Moreover, there is no evidence here of any delay in the insurer's responding to the insured's inquiries, any fundamental differences among the multiple assessments, or any refusal by the insurer to make additional payments in accordance with an increased assessment of damage.

Furthermore, Spicewood bases its bad faith claims on the assertion that the total amount ultimately paid under the policy is insufficient—a wrongful denial of benefits—not on an assertion that the total amount should have been paid at the time of the initial assessment—a wrongful delay of benefits. *See Giles*, 950 S.W.2d at 56. The fact that Spicewood requested multiple assessments, without more, is no evidence that the final assessment made was unreasonable. Likewise, the fact that America First issued multiple payments over time rather than the full payment initially is no evidence that the total amount paid is insufficient. Spicewood produced evidence that it had obtained from its own contractor a higher damage estimate than the amounts paid. However, without any evidence as to the reasonableness of the amount sought by Spicewood or the unreasonableness of the amounts paid by America First, Spicewood has failed to produce any evidence that the dispute is anything more than a bona fide dispute as to the amount of the loss. *See Travelers Pers. Sec. Ins. Co. v. McClelland*, 189 S.W.3d 846, 854 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

Spicewood's summary judgment evidence—including America First's senior claim adjuster's affidavit and the reports issued by three separate inspectors hired by America First—does not provide any evidence that America First's basis for rejecting Spicewood's claim for additional amounts was unreasonable, *see Lyons*, 866 S.W.2d at 601, or that America First's liability for

14

such additional amounts was reasonably clear, *see Giles*, 950 S.W.2d at 56, or that anything more than a bona fide coverage dispute exists between the parties, *see Williams*, 955 S.W.2d at 268. Therefore, the district court's grant of a take nothing summary judgment as to Spicewood's claims for breach of a common-law duty of good faith and fair dealing and for violations of insurance code chapter 541 and the DTPA was not error.

***Conclusion***

We reverse the district court's judgment with respect to Spicewood's claims for breach of contract, prompt-payment penalties under insurance code chapter 542, and attorneys' fees in connection with such claims, and we remand those claims to the district court for further proceedings. We affirm the district court's judgment with respect to all other claims.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed in part; Reversed and Remanded in part

Filed: June 12, 2009

15